UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUE HENCHEY, individually and on behalf of similarly
situated female employees,                                                    Case Number:

               Plaintiffs,

                                **COLLECTIVE ACTION**
     -v-                              **COMPLAINT WITH JURY**
                                 **DEMAND**

THE FRESH MARKET INC. and MIKE MIGNOLA

               Defendants.
-------------------------------------------------------------------X

Plaintiff SUE HENCHEY ("Ms. Henchey" or "Plaintiff"), on behalf of herself and all others similarly situated (collectively as "EPA Plaintiffs"), by and through her attorneys, the Law Offices of William Cafaro, as and for her Complaint against THE FRESH MARKET INC. ("The Fresh Market") and MIKE MIGNOLA ("Mignola") (together "Defendants"), allege upon knowledge to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.     Plaintiff brings this action against Defendants individually and on behalf of a collective of EPA Plaintiffs to redress Defendants' discriminatory pay practices, in violation of the Equal Pay Act, 29 U.S.C. § 206 et seq. ("EPA") and the New York State Pay Equity Law, N.Y. Lab. Law § 193 et seq. ("NYLL"). These claims are brought on behalf of Plaintiff and all other persons similarly-situated during the applicable EPA limitations period who suffered damages as a result of Defendants' willful violations of the EPA.

2.     Plaintiff further brings this action pursuant to the New York State Human Rights Law, New York Exec. Law § 290 et seq., as amended ("NYSHRL") and other appropriate rules, regulations, statutes, and ordinances. Specifically, Plaintiff brings claims for discrimination and

unlawful termination on the basis of gender and/or perceived disability. Plaintiff also brings claims for retaliation for engaging in protected activity in violation of the NYSHRL and NYLL.

3.     Finally, Plaintiff brings her claims under the NYLL and its implementing regulations on behalf of herself, individually, and on behalf of any EPA Plaintiff who opts into this action.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under the EPA.  The Court has supplemental jurisdiction over Plaintiffs' related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

5.     Alternatively, the Court has jurisdiction over this matter based upon 28 U.S.C. § 1332, insofar as it involves a corporate Defendant who is a citizen of Delaware and North Carolina, an individual defense who is a citizen of Connecticut and a Plaintiff who is a citizen of New York for the purposes of diversity jurisdiction.

6.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district.

## PARTIES

8.     Plaintiff is a resident of the State of New York and resides in Suffolk County.

9.     Plaintiff is a citizen of the State of New York for the purposes of diversity jurisdiction.

10.     At all times herein pertinent, Plaintiff, was an "employee" of the Defendant, within the meaning of the EPA, NYLL, and the NYSHRL.

11.     At all times herein pertinent, The Fresh Market was and is a foreign business corporation created under the law of the State of Delaware.

12.     The Fresh Market is authorized by the Secretary of State to transact business within the state.

13.     At all times herein pertinent, The Fresh Market's principal place of business is located at 300 N. Greene Street, Greensboro, North Carolina 27401.

14.     The Fresh Market is a citizen of the States of Delaware and North Carolina for the purposes of diversity jurisdiction.

15.     At all times herein pertinent, The Fresh Market was an employer of Plaintiff within the meaning of the EPA, NYLL, and the NYSHRL.

16.     At all times herein pertinent, The Fresh Market had fifty (50) or more persons in its employ.

17.     Upon information and belief, for the calendar year 2020 the gross receipts of The Fresh Market were not less than $500,000.00.

18.     Upon information and belief, for the calendar year 2021 the gross receipts of The Fresh Market were not less than $500,000.00.

19.     Upon information and belief, for the calendar year 2022 the gross receipts of The Fresh Market were not less than $500,000.00.

20.     Upon information and belief, for the calendar year 2023 the gross receipts of The Fresh Market will not be less than $500,000.00.

21.     The Fresh Market engaged in interstate commerce within the meaning of the EPA as it used supplies in the course of business, much of which originated in states other than New York, the combination of which subjects it to the EPA's requirements as an enterprise.  Upon

information and belief, these supplies include, but are not limited to, cleaning supplies and produce.

22.     Defendants' employees, including Plaintiff, were individually engaged in interstate commerce as they frequently used goods that have been, and continue to be, moved in interstate commerce.  This independently subject Defendants to the requirements of the EPA with respect to Plaintiff.

23.     At all times herein, Defendant Mignola was a resident of the State of Connecticut, Hartford County.

24.     Defendant Mignola is a citizen of the State of Connecticut for the purposes of diversity jurisdiction.

25.     At all times herein, Defendant Mignola was the Regional Operations Manager for The Fresh Market.

26.     Defendant Mignola had the power to hire and fire employees at The Fresh Market and fired the Plaintiff herein.

27.     Defendant Mignola controlled the terms and conditions of Plaintiff's employment in that he would tell her what tasks to complete and on what time frame they needed to be completed.

28.     Upon information and belief, Defendant Mignola controlled the rates and methods of payment of each of the employees of The Fresh Market within his territory, including the Plaintiff's rates and methods of pay.

29.     At all times herein pertinent, the Plaintiff performed her duties for The Fresh Market at the direction and under the control of Defendant Mignola

30.    Upon information and belief, and at all times herein pertinent, Defendant Mignola exercised close control over the managerial operations of The Fresh Market within his territory, including the policies and practices concerning employees.

31.    At all times herein pertinent, Defendant Mignola controlled the terms and conditions of employment, supervised employees, made decisions as to hiring and firing and as to wages with respect to the employees of The Fresh Market in general, and with respect to the Plaintiff in particular.

32.    At all times herein pertinent, Defendant Mignola acted as the Plaintiff's employer within the meaning of the EPA, the NYLL and the NYSHRL.

33.    As stated in more detail below, Defendant Mignola actually participated in the conduct giving rise to the claims of discrimination alleged herein making him liable as an aider and abettor of unlawful discrimination.

## FACTUAL ALLEGATIONS

34.    The Fresh Market owns and operates a chain of supermarkets.

35.    Throughout her employment with the Defendants, Ms. Henchey worked at The Fresh Market store located at 138 E. Main Street, Smithtown, NY 11787 (the "Long Island Fresh Market")

36.    Despite its mission statement and alleged "non-discrimination policy", there is no question that historically and through to the present men have run The Fresh Market, creating and implementing a system of inequality and disparity between male and female employees.

37.    Plaintiff worked for Defendants from December 2015 until her termination on or about August 21, 2023. For that entire time, Plaintiff suffered discrimination in pay as a result of gender, in violation of the EPA, the NYLL, and the NYSHRL.

38.    Throughout her employment with the Defendants, Ms. Henchey proved to be a smart, driven, and ambitious employee.

39.    Due to the above work ethic, and before the discriminatory events outlined below, Ms. Henchey received praise and positive reviews from supervisors and colleagues alike. For example, in October 2022, Ms. Henchey was given an ***Excellence Award for having the second highest overall satisfaction score of any Store Manager in the United States***.

40.    Prior to the discriminatory events outlined below, Ms. Henchey was never written up, reprimanded, or disciplined in any way.

41.    Since Ms. Henchey became a store manager, Defendant Mignola made his discriminatory animus known to her and others.

42.    Although Defendant Mignola would visit the stores that were managed by men on a weekly basis, he only visited Ms. Henchey's (and other female managed) store approximately once a month. This allowed Defendant Mignola to give these male store managers unofficial mentoring and help male managers in their career with The Fresh Market.

43.    When Defendant Mignola did visit Ms. Henchey's (and other female managed) store he would be overly critical, yell at the female store manager (including Ms. Henchey) as well as the other employees of female run stores. When Ms. Henchey challenged Defendant Mignola on his criticisms he would respond by telling Ms. Henchey to keep her mouth shut and do what she was told. Upon information and belief, Defendant Mignola would not overly criticize male store managers or the employees at male run stores.

44.    Further, Defendant Mignola would make up issues with the Long Island Fresh Market. For example, approximately a week before she was terminated, Defendant Mignola marched into the Long Island Fresh Market and met with Ms. Henchey. During this meeting he stated that he had personally reviewed the timecards of the Long Island Fresh Market and berated Ms. Henchey for not having a single employee close the store. When Ms. Henchey stated that Defendant Mignola was incorrect and all department managers rotate closing, Defendant Mignola refused to believe her and called the Fresh Market's corporate office to confirm. After asking when the particular employee last closed the Long Island Fresh Market (as well as the time before that, and the time before that, and the time before that) and found that the employee closed the store on a weekly basis, Defendant Mignola was visibly angry and began yelling and Ms. Henchey.

45.    After the call above was ended, rather than apologize to Ms. Henchey for the false accusation, in order to hurt Ms. Henchey and to reveal his intentions, Defendant Mignola offensively asked about the mental condition of Ms. Henchey's granddaughter who Mignola knew had been admitted into Stony Brook Psychiatric Center a month prior. When Ms. Henchey asked why Defendant Mignola would bring up Ms. Henchey's granddaughter, Defendant Mignola admitted he was worried whether Ms. Henchey had similar issues and wanted to test whether she was of "***sound mind and body.***"

46.    On or about August 6, 2023, Ms. Henchey contacted The Fresh Market's Human Resources department. During this conversation, Ms. Henchey spoke with a Human Resources Manager and complained:

a.    That Defendant Mignola treated women differently than similarly situated men;

b.    That Defendant Mignola yelled and screamed at female employees;

c.    That Defendant Mignola cursed at female employees;

7

    d.   That Defendant Mignola talks down to female employees;

    e.   That the Defendants pay women **thousands of dollars less men** for doing the same work.

    47.    **Less than a month** after Ms. Henchey complained to Human Resources of Defendant Mignola's discriminatory conduct, she was terminated.

    48.    On August 21, 2023, Defendant Mignola called Ms. Henchey into the office from the loudspeaker of the Long Island Fresh Market. When she arrived, Ms. Henchey was confronted by Defendant Mignola and a member of The Fresh Market's Human Resources department (who appeared over Zoom).

    49.    During the meeting, Defendant Mignola asked why Ms. Henchy had documented when two female department managers were 10-15 minutes late for their shift several times. In response, Ms. Henchey explained that the two women in question had childcare issues and would sometimes come in late. She further stated that she understood that this was unacceptable but felt that giving these women some leeway helped the morale at the Long Island Fresh Market which, in turn, helped keep turnover low. Lastly, Ms. Henchey stated that she would begin giving written warnings to all employees who were late. In response, Defendant Mignola stated that Ms. Henchey was being terminated.

    50.    Ms. Henchey was terminated on August 21, 2023.

    51.    Upon information and belief, Defendants did not follow their own corporate policies concerning termination of employees, when terminating Plaintiff. Upon information and belief, failing to give a written warning to an employee is not a reason to fire a store manager.

    52.    Ms. Henchey was terminated due to her gender.

    53.    Defendants knew of the discriminatory conduct outlined in this Complaint and failed to take immediate and appropriate corrective action.

54.    Defendants treated members outside of Plaintiff's gender more favorably by not subjecting them to the discriminatory conduct outlined in the Complaint.

55.    The Plaintiff was terminated for reporting Defendants' discriminatory conduct.

56.    Upon information and belief, Ms. Henchey was replaced by a man.

57.    Upon information and belief, Plaintiff was replaced by someone outside of her protected class.

58.    Defednants have treated the Plaintiff unequally and less well than other employees because of her gender.

59.    Male employees have and continue to be treated more favorably than Plaintiff.

60.    Defendants retaliated against Plaintiff due to the complaints he made regarding discriminatory treatment.

61.    Ms. Henchey began working for the Defednants as a floral manager.

62.    Approximately a year later, Ms. Henchey was promoted to the role of Bakery manager.

63.    In 2018, Ms. Henchey was promoted to Assistant Store Manager of the Long Island Fresh Market.

64.    In September 2021 Ms. Henchey was promoted to Store Manager of the Long Island Fresh Market.

65.    Upon information and belief, throughout her entire employment, Defendants paid Plaintiff less than similarly situated male employees despite her exemplary performance; indeed, she was paid approximately ***20-30% less than men*** for equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

66.     For example, and upon information and belief, throughout her employment as a Store Manager Plaintiff was paid between (at least) 30% less than male Store Managers in the same region.  These men perform the same tasks as Plaintiff, and upon information and belief, do so with no greater skill or effort than Plaintiff, achieving a substantially equivalent level of performance.

67.     Upon information and belief, Plaintiff is not the only woman to suffer the effects of the compensation policies and practices the Fresh Market, which lacked sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female store managers, assistant store managers, and department managers.

68.     Upon information and belief, Defendants systematically paid female employees less than similarly situated male employees. Defendants underpay female store managers, assistant store managers, and department managers relative to similarly situated male employees.

## COLLECTIVE ACTION ALLEGATIONS

69.     Plaintiff's Cause of Action under the Equal Pay Act is being prosecuted as a collective action pursuant to the Equal Pay Act, 29 U.S.C. §206 *et seq*.

70.     Plaintiff incorporates by reference the allegations from the preceding paragraphs, including those alleging common patterns, practices, and/or policies by Defendants resulting in unlawful discrimination, as fully set forth herein.

71.     Plaintiff alleges claims under the Equal Pay Act on both an individual basis and on behalf of a collective of female store managers, assistant store managers, and department managers who have been are now or will be employed by Defendants at any time during the applicable

liability or statute of limitations periods, up to and including the date of any judgment in this case (the "EPA Collective").

72.     The discriminatory employment practices that disproportionately affect female store managers, assistant store managers, and department managers and cause them to be paid less than similarly situated men at The Fresh Market exist in connection with subjective decision-making about:

    a)  Compensation, including hourly pay, salary base pay, discretionary bonuses;

    b)  Hiring;

    c)  Development;

    d)  Advancement;

    e)  Promotions;

    f)  Work assignments;

    g)  Level of responsibility;

    h)  Demotions;

    i)  Failing to prevent, address, properly investigate and/or take remedial action regarding claims of discrimination against female employees; and

73.     The subjective decision-making about the items listed above regularly involves bias and by the individuals at The Fresh Market that have the power and authority to render such decisions.

74.     As such, the systemic discriminatory practices that disproportionately affect female employees' compensation as compared to similarly situated men at The Fresh Market include, inter alia:

    a)  Discretionary hiring practices that disfavor female employees;

b) Discretionary compensation policies that disfavor female employees;

c) Discretionary performance evaluation systems that disfavor female employees;

d) Discretionary promotion systems that disfavor female employees; and

e) Discretionary termination practices that disfavor female employees.

75. This discrimination is intensified and perpetuated by The Fresh Market's repeated failures regarding the ability to prevent, address, properly investigate and/or take remedial action when female employees complain about discrimination.

76. Repeatedly, The Fresh Market has failed to prevent, address, properly investigate and/or take remedial action when other employees report incidents to The Fresh Market that suggest gender motivated bias.

77. The internal statistical data that shows that female store managers, assistant store managers, and department managers were clearly disfavored as compared to male store managers, assistant store managers, and department managers is overwhelming and has existed for years.

78. Such systemic failures allow managers, predominantly or entirely male, to perpetuate gender discrimination against female employees that has and continues to cause them to experience the following, *inter alia*:

a) Unequal hourly wages for substantially the same work as compared to male employees;

b) Unequal base salary for substantially the same work as compared to male employees;

c) Unequal performance evaluations as compared to male employees;

d) Unequal bonuses for substantially the same work as compared to male employees;

e) Unequal benefits and other forms of compensation as compared to male employees;

f) Unequal opportunities for advancement as compared to male employees.

79.     The above conduct resulted in subjecting female employees to lesser terms and conditions of employment.

80.     Upon information and belief, The Fresh Market subjected female store managers, assistant store managers, and department managers at all levels to such unequal pay. The pay disparity as compared to men is especially egregious for these women that occupy some of the lower paid positions at The Fresh Market.

81.     The Fresh Market's systemic discrimination against the EPA Collective is continuing in nature. The EPA Collective members were paid less and denied promotions at a greater rate by The Fresh Market than were similarly situated male store managers, assistant store managers, and department managers despite performing similar or the same work and having comparable or better experience and qualifications.

82.     The Fresh Market's discrimination against Plaintiff and the EPA Collective was the result of common patterns, practices and/or policies, and acquiescence to and ratification of such patterns, practices and/or policies. The claims of Plaintiff stated herein are essentially the same as those of the other EPA Collective members.

83.     The EPA Collective is readily ascertainable, and the names and addresses of the EPA Collective members are readily ascertainable from The Fresh Market's records and files.

84.     Common questions of law and fact predominate with respect to Plaintiff and the EPA Collective, who worked in New York and were subject to substantially similar Company employment patterns, practice and/or policies.

## *FIRST CLAIM FOR RELEF AGAINST DEFENDANTS*
### *Violations of the Equal Pay Act*

85.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

86.    The claims brought herein under the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, are brought on behalf of Plaintiff and all members of the EPA Collective.

87.    During the period of the employment of Plaintiff and all members of the EPA Collective, Defendants were subject to the provisions of the Equal Pay Act, 29 U.S.C. § 206 et seq. During that time, Defendants required Plaintiff and the members of the EPA Collective to perform the same or substantially the same job position as males, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff and the members of the EPA Collective at a rate of pay, including salary and bonus, less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender.

88.    Defendant engaged in patterns, practices and/or policies of employment that discriminated against Plaintiff and the members of the EPA Collective on the basis of their gender and by paying Plaintiff and the EPA Collective members a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishments.

89.    By the actions described above, among others, Defendants have violated the Equal Pay Act, 29 U.S.C. § 206 et seq.

90.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff and the EPA Collective members have suffered, and continue to suffer, harm for which they are entitled to an award of monetary damages and other relief.

91.     Plaintiff and the members of the EPA Collective are further entitled to liquidated damages, reasonable costs and attorneys' fees.

## SECOND CLAIM FOR RELEF AGAINST DEFENDANTS
### Violations of the NY Equal Pay Law

92.     Plaintiff and any EPA Plaintiff who opts into this action hereby repeat, reiterate, and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

93.     During Plaintiff's period of employment and that of any EPA Plaintiff who opts into this action, Defendant was subject to the provisions of the New York Pay Equity Law, New York Labor Law § 194 et seq. ("New York Labor Law"). Defendant required Plaintiff and any EPA Plaintiff who opts into this action to perform the same or substantially the same job position as male, employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff and any EPA Plaintiff who opts into this action at a rate of pay, including salary and bonus, less than such male employees.  The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other than gender, such as education, training, or experience.

94.     Defendant engaged in patterns, practices and/or policies of employment that discriminated against Plaintiff and any EPA Plaintiff who opts into this action on the basis of their

gender by paying them a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

95.     By the actions described above, among others, Defendant has violated the New York Labor Law.

96.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York Labor Law, Plaintiff and any EPA Plaintiff who opts into this action have suffered, and continue to suffer, harm for which they are entitled to an award of monetary damages and other relief.

97.     Plaintiff and any EPA Plaintiff who opts into this action are further entitled to liquidated damages, reasonable costs and attorneys' fees.

### THIRD CLAIM FOR RELEF AGAINST DEFENDANTS
#### Discrimination under the NYSHRL

98.     Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

99.     The New York State Human Rights Law Provides that it shall be unlawful discriminatory practice:

> For an employer… because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, or marital status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

100.    Defendants discriminated against Plaintiff on the basis of Plaintiff's gender in violation of NYSHRL.

101.    Defendants discriminated against Plaintiff on the basis of Plaintiff's perceived disability in violation of the NYSHRL.

102.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

103.    As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

104.    Defendants have acted with malice or reckless indifference to the Plaintiff.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
#### Retaliation in Violation of the NYLL

105.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106.    Section 215 of the NYLL prohibits employers from retaliating against an employee because an employee has made a complaint relating to improper payment of wages under the NYLL and/or for engaging in protected activity under the NYLL.

107.    As described above, Defendants are employers within the meaning of the NYLL while Plaintiff is an employee within the meaning of the NYLL.

108.    As also described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYLL.

109.    Due to Defendants' violation of the NYLL's anti-retaliation provisions, Plaintiff is entitled to compensatory damages, back pay, front pay, employee benefits Plaintiff would have

otherwise received, damages for emotional pain, suffering, humiliation and embarrassment, punitive damages, liquidated damages, attorneys' fees, costs and interest as permitted by law.

110.    At or before the filing of this Complaint, Plaintiff has served notice of the action upon the Office of the New York State Attorney General.

### FIFTH CLAIM FOR RELEF AGAINST DEFENDANTS
#### Retaliation under the NYSHRL

111.    Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

112.    By the actions described above, among others, Defendants retaliated against Plaintiff for making protected complaints regarding discrimination on the basis of gender.

113.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

114.    As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

115.    Defendants have acted with malice or reckless indifference to the Plaintiff.

### SIXTH CLAIM FOR RELEF AGAINST DEFENDANTS
#### Aiding and Abetting Under the NYSHRL

116.    Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

117.    The New York State Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

118.    Defendants violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

119.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

120.    As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

121.    Defendants have acted with malice or reckless indifference to the Plaintiff.


**JURY DEMAND**

122.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff and the EPA Collective hereby demand a trial by jury with respect to all issues so triable

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the EPA Collective, pray the Court enter judgment in their favor and against Defendant, containing the following relief:

a)    A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New York;

b) An injunction and order permanently restraining Defendants and its partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

c) An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d) Designate this action as a collective action on behalf of the proposed EPA Collective Plaintiffs (asserting EPA claims) and

    a. promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA Collective, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely EPA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and

    b. tolling the statute of limitations on the claims of all members of the EPA Collective from the date the original complaint was filed until the Collective members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

e) Designate the Named Plaintiff as representatives of the EPA Collective;

f) An award of damages against Defendant in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff and the EPA Collective for all monetary and/or economic damages;

g) An award of damages against Defendant in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff and the EPA Collective for all non-monetary and/or compensatory damages;

h)   An award of future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, and all other benefits he would have expected to earn during his entire lifetime had it not been for Defendants' unlawful discrimination/retaliation;

i)   An award of compensatory damages for mental and emotional distress, pain and suffering as well as injury to her reputation in an amount to be proved at trial;

j)   An award of punitive damages;

k)   An award of liquidated damages;

l)   Prejudgment interest on all amounts due;

m)   An award for all relief under the aforementioned statutes;

n)   An award of costs that Plaintiffs and the EPA Collective incur in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

o)   Such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
          September 26, 2023

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

By: Amit Kumar, Esq. (AK 0822)
*Attorneys for the Named Plaintiff as well as the putative Collective*
108 West 39th Street, Ste. 602
New York, New York 10018
(212) 583-7400
AKumar@CafaroEsq.com